NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERNEST RAY MILLER | : |
| Plaintiff, | : |
| v. | : Civil Action No. 11-7094 |
| | : OPINION |
| MICHAEL J. ASTRUE, | : |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

**CECCHI, District Judge.**

Ernest Ray Miller ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying his disability benefits under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). This motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part and remanded in part.

I.     **PROCEDURAL HISTORY**

Plaintiff filed for Disability Insurance Benefits ("DIB") from the Social Security Administration ("SSA") on July 16, 2008, alleging disability beginning on July 10, 2008. (Tr. 32.) His claim was denied. (Tr. 34-38.) He subsequently filed a request for reconsideration, which was also denied. (Tr. 39-41.) Plaintiff then filed a request for a hearing before an ALJ, which was held on March 9, 2010. (Tr. 21-31.) The ALJ determined that Plaintiff was not disabled. (Tr. 11-17.) The Appeals Council denied review, which rendered the decision of the

ALJ the final judgment of the Commissioner. (Tr. 1-5.) Plaintiff then initiated the current action in this Court, requesting the Court to either reverse the ALJ's decision and declare Plaintiff entitled to DIB as of July 10, 2008, or to vacate the ALJ's decision and remand this case for a new hearing. (Pls.' Complaint 2-3.)

Plaintiff failed to file a timely brief in accordance with Local Civil Rule 9.1(a)(3). On July 25, 2012, this Court administratively terminated the action and ordered Plaintiff to show cause as to why the case should be reopened. On August 2, 2012, Plaintiff filed a "letter memo" in response, setting forth several short arguments and requesting this Court to consider the letter memo in conjunction with his Appeals Council memo, dated June 10, 2010. This Court reopened the matter on August 7, 2012 and accepted Plaintiff's letter memo in lieu of a formal brief.

## II. FACTUAL BACKGROUND

### I. Personal and Employment History

Plaintiff was sixty-three years old when he first applied for DIB. (Tr. 94.) He attended school through the eleventh grade. (Tr. 103.) His prior work experience included working as a car detailer and as a messenger. (Tr. 99.) Plaintiff worked as a car detailer from 1964 to 2001, washing, waxing, and buffing car exteriors, as well as cleaning car interiors. (Tr. 99.) Plaintiff walked, stood, stooped, kneeled, and crouched for four hours each day while performing this job. (Id.)

Plaintiff worked as a messenger from 2001 to 2008. (Tr. 99.) As a messenger, he took work orders, delivered mail to the post office, went to the bank and ran other clerical errands. (Tr. 117, 300.) Plaintiff testified during his hearing that while the job involved a good deal of walking, he did not have to lift anything heavy; he described it as "very light." (Tr. 26.) His

October 1, 2008 Function Report indicated that the most he had to carry as a messenger was five pounds. (Tr. 117.) Plaintiff also testified that he drove from place to place to make his deliveries. (Tr. 26.)

**II.  Medical History**

In July of 2003, Plaintiff began seeing Dr. William McHugh for treatment of his diabetes. (Tr. 277.) On June 10, 2008, Plaintiff went to the emergency room at the Robert Wood Johnson University Hospital for hypoglycemia. (Tr. 160-68.) Plaintiff was described as "disoriented" and was treated with glucose. (Tr. 167-68.) His symptoms thereafter improved. (Id.) Results from Plaintiff's electrocardiogram ("EKG") showed sinus bradycardia, but were otherwise normal. (Tr. 170-72.) On July 10, 2008, Plaintiff went to the Trinitas Hospital Emergency Department for low blood sugar. (Tr. 176-87.) He was again treated with glucose and released after his symptoms improved. (Tr. 179.) His EKG results remained the same. (Tr. 188.)

On July 11, 2008, Plaintiff's blood glucose was measured high at 144. (Tr. 194.) On July 25, 2008, Plaintiff went back to Dr. McHugh to continue his treatment for diabetes. (Tr. 193.) At that time, Dr. McHugh noted that Plaintiff was looking into applying for Social Security benefits because he claimed to not have the strength to work. (Id.) Dr. McHugh, however, did not seem to identify any abnormalities in a physical examination. (Id.)

On September 5, 2008, Dr. Rambhai Patel performed a consultative examination on Plaintiff. (Tr. 286-88.) Plaintiff complained of high blood pressure and hypertension. (Tr. 286.) He described symptoms of passing out, frequent urination, blurry vision, headaches and chest pain. (Id.) Plaintiff also used a non-prescription cane to walk because he claimed to experience joint pain, dizziness and balance problems. (Tr. 287.) Dr. Patel noted Plaintiff's use of a cane and observed that he limped on his left side. (Id.) However, his examination showed that

Plaintiff's lower extremities had no edema or calf tenderness, and that his reflexes and sensation were normal. (Id.) Dr. Patel concluded that there were no gross neurological deficits. (Id.) Plaintiff's blood pressure was recorded as 150/100. (Id.)

On September 30, 2008, Dr. Nawal Abdelmessieh, a state agency review physician, reviewed the file and completed a residual functional capacity ("RFC") assessment. (Tr. 291-98.) Dr. Abdelmessieh found that Plaintiff could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. (Tr. 292.) The doctor also found that Plaintiff could stand and/or walk for about six hours in an eight-hour workday, as well as sit for about six hours in an eight-hour workday. (Id.) He did not find Plaintiff to have any limitations in his ability to push and/or pull. (Id.) Finally, he determined that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not climb ladders, ropes or scaffolds. (Tr. 293.)

Medical records indicate that on October 17, 2008, Plaintiff went to the Elizabeth Medical Group. (Tr. 322.) At the time, his blood pressure was measured as 130/80. (Id.) On November 19, 2008, at the same facility, Plaintiff's blood pressure measured as 130/70. (Tr. 321.) Plaintiff's blood pressure remained stable during April and August of 2009. (Tr. 317-18.) By October 13, 2009, his blood pressure had dropped to 110/60. (Tr. 316.)

Lab reports dated November 20, 2008 show that Plaintiff's hemoglobin A1C level was 5.9, which is within the normal range for non-diabetics. (Tr. 324.) Reports from August 25, 2009 indicate that Plaintiff's glucose level was 120, also within the normal range for non-diabetics. (Tr. 325.)

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" and must give deference to the administrative findings. Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (footnote and internal quotations omitted). Substantial evidence is "'more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-cv-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x. 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)). However, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 Fed. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)). Furthermore, where the opinion from a treating physician is rejected in favor of the opinion of a non-treating physician, the ALJ must adequately explain his reasons and provide the rationale behind his decision. See Brewster v. Heckler, 786

5

F.2d 581, 585 (3d Cir. 1986). Given the totality of the evidence, including objective medical facts, diagnoses, medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. See Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Generally, medical opinions consistent with other evidence are given more weight, whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record. 20 C.F.R. § 416.927. Overall, the substantial evidence standard is a deferential standard of review that requires deference to inferences drawn by the ALJ from the facts if they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

**B. Determining Disability**

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a plaintiff must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). Thus, Plaintiff's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. Impairments that affect Plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations. 20 C.F.R. § 404.1569(a); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000). All other impairments are considered non-exertional. See Sykes, 228 F.3d at 263. Decisions regarding disability are made individually and are based on evidence adduced at a hearing.

Sykes, 228 F.3d at 262 (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The SSA follows a five-step sequential evaluation to determine whether a plaintiff is disabled. 20 C.F.R. § 416.920. The evaluation will continue through each step unless it can be determined at any point that Plaintiff is, or is not, disabled. 20 C.F.R. §416.920(a)(4). Plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263, n.2.

At step one, Plaintiff's work activity is assessed, and Plaintiff must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.927. If Plaintiff is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of plaintiff's medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b). If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step. At step two, Plaintiff must show that he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. See Leonardo v. Comm'r of Soc. Sec., No. 10-1498,

2010 U.S. Dist. LEXIS 120944, at *9-11 (D.N.J. Nov. 16, 2010). If Plaintiff does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), (c). If Plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether Plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, Plaintiff is *per se* disabled. 20 C.F.R. § 416.920(d); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. Burnett, 220 F.3d at 119. The Third Circuit requires the ALJ to identify the relevant listings and explain his reasoning using the evidence. Id. Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." Id.

When Plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether Plaintiff's residual functional capacity enables him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of facts as to Plaintiff's residual functional capacity; (2) the ALJ must make findings regarding the physical and mental demands of Plaintiff's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether Plaintiff has the capability to perform the past relevant work. Burnett, 220 F.3d at 120. The SSA classifies residual functional capacity and past work by physical exertion requirements ranging from "sedentary" to "very heavy work." See id.; 20 C.F.R. § 404.1567. If Plaintiff can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. § 416.920(f). If Plaintiff lacks the

residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on Plaintiff's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that Plaintiff can perform. 20 C.F.R. § 416.920(a)(4)(v). During this final step, the burden lies with the government to show that Plaintiff is not disabled by demonstrating that there is other substantial, gainful work that Plaintiff could perform, given her age, education, work experience and residual functional capacity. See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Sykes, 228 F.3d at 263. If the Commissioner cannot show that there are other jobs for Plaintiff in the national economy, then Plaintiff is disabled. 20 C.F.R. § 416.920(a)(4)(iv).

## IV. THE ALJ'S DECISION

The ALJ followed the traditional five-step analysis in reaching his decision. At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2008, the alleged onset of Plaintiff's disabilities. (Tr. 13.) As Plaintiff filed for DIB on July 16, 2008, subsequent to the termination of any gainful employment, the ALJ proceeded to step two. (Tr. 11.)

At step two, the ALJ found that Plaintiff suffered from two severe impairments: "insulin dependent diabetes mellitus and hypertension." (Tr. 13.) The ALJ then proceeded to step three, finding that Plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Id.)

The ALJ noted that although Plaintiff suffered from diabetes, the record did not indicate any neuropathy "with significant and persistent disorganization of motor function in 2 extremities resulting in sustained disturbance of gross and dexterous movements or gait and

station." (Id.) Neither was there evidence of "recurrent acidosis or retinitis proliferans that would satisfy the criteria in [the] listings." (Tr. 14.) Further, the ALJ found that, although Plaintiff suffered from hypertension, the record did not indicate "significant related end organ damage, such as visual impairments, heart disease, renal failure, or stroke residuals." (Id.) As a result, the ALJ found Plaintiff's hypertension to be inadequate to satisfy one of the applicable listings. (Id.)

The ALJ then proceeded to step four of the analysis. After considering the record, the ALJ found Plaintiff to have the "residual functional capacity to perform the full range of light work." (Id.)[1]

While the ALJ found that Plaintiff's disabilities could reasonably be expected to cause the alleged symptoms, he did not find Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms to be credible. (Id.) The ALJ noted that although medical records indicated that Plaintiff suffered from uncontrolled blood sugar from 2004 to early 2008, Plaintiff's hypoglycemia and diabetes subsequently seemed to be under control. (Tr. 15.) For instance, lab notes from November of 2008 and August of 2009 indicated that Plaintiff's hemoglobin A1c and glucose levels were within control. (Id.) Moreover, although Plaintiff was hospitalized twice in 2008 – June 10 and July 10 – due to low blood sugar, the ALJ concluded that those episodes of hypoglycemia were resolved with the administration of glucose and that "[t]he record [did] not indicate any more incidents of hypoglycemia requiring hospital treatment since 2008." (Tr. 14-15.)

---

[1] The ALJ followed a two-step process: first, the ALJ determined whether there existed any physical or mental impairment. The ALJ then assessed whether those impairments could "reasonably be expected to produce the [Plaintiff's] pain or other symptoms," including the "intensity, persistence, and limiting effects" of those symptoms. (Id.)

10

Additionally, the ALJ addressed Plaintiff's claims that his blood sugar "fluctuated wildly" from 165 to 190 when Plaintiff tested his blood sugar on his own. (Tr. 15.) The ALJ did not find this claim to be supported by evidence in the record. In particular, the ALJ cited treatment notes from Dr. McHugh on July 25, 2008, which indicated that the claimant's blood sugar generally ranged from 130-140. (Id.) As a result, the ALJ concluded that Plaintiff's "insulin levels have put an end to the hypoglycemic episodes" and that Plaintiff's diabetes was under control. (Id.)

The ALJ further noted that Plaintiff came to the hearing with a cane and testified that it was because he had "a lot of pain in his legs." (Id.) The ALJ cited to the findings of consultative examiner Dr. Patel, who stated that although Plaintiff had a "left-sided limp," the cane was not prescribed and Plaintiff used it for "dizziness, pain, and balance problems." (Id.) The ALJ relied on Dr. Patel's notes to find that Plaintiff "had normal reflexes and sensation in the lower extremities" as well as "no gross neurological deficits." (Id.) Based on medical examinations on June 10, 2008 and July 10, 2008, the ALJ concluded that nothing in the record indicated that Plaintiff suffered from neuropathy. (Id.) The ALJ also noted that Dr. McHugh's records did not indicate retinopathy. (Id.)

The ALJ then went on to address Plaintiff's hypertension. The ALJ noted that there was "no evidence of significant related end organ damage." (Tr. 16.) The ALJ relied on EKG studies performed on June 10 and July 10 of 2008, which were normal except for sinus bradycardia. (Id.) Moreover, the ALJ again cited to Dr. Patel, who noted that the claimant's blood pressure was 150/100 with a regular sinus rhythm heartbeat. (Id.)

Finally, the ALJ consulted reports from Dr. Abdelmessieh, a non-examining state agency medical consultant, to conclude that Plaintiff was capable of performing light work. Dr.

Abdelmessieh observed that Plaintiff was capable of performing daily activities, that "his blood sugar was controlled, with no evidence of complications," and that his EKG was normal and unremarkable with no complications associated with hypertension. (Id.)

In view of all of the evidence, the ALJ concurred with Dr. Abdelmessieh's findings that Plaintiff had the residual functional capacity to perform light work, i.e. that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand/walk up to 6 hours in an 8-hour day, and sit up to 6 hours in an 8-hour day. (Id.)

Finally, based on Plaintiff's residual functional capacity, the ALJ found that Plaintiff was capable of resuming his past work as a messenger and a car detailer, as Plaintiff himself testified that he did not have to carry anything over 10 pounds while working at those jobs. (Id.) In conclusion, the ALJ found Plaintiff to be "not disabled" as defined under the Act. (Id.)

## V. DISCUSSION

Plaintiff appeals on several grounds, relying both on his letter memo and his Appeals Council memo dated June 10, 2010. (Letter memo 1, Tr. 154-57.) As an initial matter, Defendant objects to the inclusion of the Appeals Council memo. (Def.'s Br. 8.) Defendant argues that it "is improper under Local Civil Rule 9.1 because the Rule states that plaintiff must include his arguments and reasons within his brief." (Id.) Defendant further contends that since the Appeals Council denied review, the ALJ's decision is final. However, because this Court accepted Plaintiff's letter memo, which included a reference to the Appeals Council memo, in lieu of a more formal brief, it will treat the arguments made in the Appeals Council memo as if they are incorporated by reference in the letter memo. Hence, this Court will address all of Plaintiff's arguments.

> i. *The ALJ's Credibility Determination as to the Weakness in Plaintiff's Legs Satisfies the Standard Set Forth by the Third Circuit.*

The ALJ's analysis of Plaintiff's leg condition constitutes a credibility determination that may be applied to step two, three, or four of the disability analysis. Because a credibility determination is a finding of fact, this Court is bound by the finding so long as it is "supported by substantial evidence in the record." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. In reaching his decision, the ALJ can give weight to the evidence before him. See Rutherford, 399 F.3d at 554.

In his Appeals Council memo, Plaintiff argues that the ALJ did not include "the weakness in [his] legs as a severe impairment." (Tr. 154.) Although the ALJ did not specifically address Plaintiff's leg weakness in step two of his analysis and list it as a severe impairment, the ALJ did address the matter in detail during step three and four of his analysis. During step three of the analysis, the ALJ mentioned that "the record does not document neuropathy" associated with "insulin dependent diabetes." (Tr. 13.) Moreover, during step four, the ALJ discussed Plaintiff's leg limp in length and found Plaintiff to have the "residual functional capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b)." (Tr. 14-15.)

The ALJ further noted that Plaintiff "came to the hearing with a cane, which he testified that he use[d] because he has a lot of pain in his legs." (Tr. 15.) Nevertheless, the ALJ cited to numerous medical records before arriving at the conclusion that there was "nothing in the file to indicate that the [plaintiff] had neuropathy." (Id.) In particular, the ALJ pointed out that although Plaintiff told Dr. Patel that "he use[d] [a cane] for dizziness, pain, and balance problems," the cane was not prescribed, and "Dr. Patel noted that the claimant had normal reflexes and sensation in the lower extremities and that he had no gross neurological deficits."

13

(Tr. 15, 287-88.) As explained by the ALJ, Dr. Patel concluded that "there was no evidence of neuropathy or any vascular involvement (Exhibit 4F)." (Id.)

Additionally, the ALJ cited to Plaintiff's June 10, 2008 examination, during which Plaintiff "denied paresthesias and had normal neurological functioning on examination." (Tr. 15, 161, 164.) The ALJ further stated that "[s]ensation was still intact on July 10, 2008." (Tr. 15, 180.) Finally, the ALJ explained that "Dr. McHugh's reports and recent records from the Elizabeth Medical Group do not document neuropathy (Exhibits 3F and 11F) and disability interviewers observed no difficulty with walking, standing, or sitting (Exhibits 1E and 5E)." (Tr. 15.) Thus, the ALJ concluded that Plaintiff did not appear to have neuropathy and that he had the "residual functional capacity to perform light work . . . (lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day)." (Tr. 16.)

In the present case, the ALJ cited to evidence in the record, and as discussed above, offered reasonable explanations for his conclusions. The Court therefore finds the ALJ's conclusion to be supported by substantial evidence.

   ii.   *The ALJ Did Not Adequately Address Whether the Combination of Plaintiff's Diabetes and Hypertension Constituted the Medical Equivalent of One of the Listed Impairments.*

Plaintiff argues in his Appeals Council memo that at step three, "the ALJ did not combine the claimant's hypertension and his diabetes in order to analyze the evidence for medical equivalence." (Tr. 154.)

The ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 13.) Although the ALJ's opinion addressed why Plaintiff's insulin dependent diabetes and hypertension did not individually meet or equal any of the applicable

14

listings, the ALJ did not provide any further explanation as to why the combination of the two impairments did not medically equal a listing. (Tr. 13-14.)

When a claimant's individual impairments do not satisfy the specific criteria of the listings, the ALJ is required to assess whether a combination of the impairments is medially equal to a listing. 20 C.F.R. § 404.1526(b)(3). To be medically equivalent, an impairment or a combination of impairments must be at least equal in severity and duration to a listed impairment. Id. Defendant argues that there is "no evidence" in the record to support that the combination of Plaintiff's ailments equaled a listed impairment. (Def.'s Br. Pursuant to Local Civil Rule 9.1, 9.) However, this Court cannot adequately assess this statement without reviewing the ALJ's analysis on the issue. See Torres v. Comm'r of Soc. Sec., 279 Fed. App'x, 149, 152 (3d Cir. 2008) (requiring the ALJ to analyze the severity of the combination of claimant's impairments). In setting forth his decision, "[t]he ALJ must adequately explain findings on equivalence." McCarthy v. Comm'r of Soc. Sec., No. 95-4534, 1999 U.S. Dist. LEXIS 7551, at *37 (D.N.J. May 19, 1999).

In Torres, the Third Circuit found that "[w]hile the ALJ explained why [the claimant's] impairments do not meet Appendix 1 listings *individually*, he failed to conduct a proper 20 C.F.R. § 404.1526(b) analysis." 279 Fed. App'x at 152 (emphasis in original). The Court found the ALJ's "entire combination analysis" of "one cursory paragraph" to be inadequate. Id. Here, although the ALJ addressed diabetes and hypertension individually, he did not consider them in combination. As such, this Court cannot provide a meaningful judicial review of his findings regarding medical equivalence. Therefore, the Court remands this case for the ALJ to determine whether the combination of Plaintiff's diabetes and hypertension medically equals one of the listings.

15

*iii. There is Substantial Evidence to Support the ALJ's Finding that Plaintiff has the Residual Functional Capacity to Perform a Full Range of Light Work*

Plaintiff makes several arguments in both his Appeals Council memo and his letter memo attacking the ALJ's findings at step four of the analysis. In the first instance, Plaintiff claims that the ALJ's reliance on Dr. Abdelmessieh's report is misplaced because "Mr. Abdelmessieh is not a physician." (Tr. 154.) However, Plaintiff offers no evidence to support this statement. In opposition, Defendant directs this Court to the New Jersey Health Care Profile website, which indicates that Dr. Abdelmessieh is a licensed physician in New Jersey with license number 25MA05173400. (Def.'s Br. 11.)

In addition, Plaintiff claims that he cannot perform the "full range" of light work because "the State Agency consultant rendered an opinion that the claimant could 'never' climb ladders, ropes or scaffolds and only 'occasionally' (one-third of the workday) climb, balance, stoop, kneel, crouch or crawl." (Tr. 154-55, see also Letter memo 1.) It is interesting to note that the State Agency consultant Plaintiff refers to is Dr. Abdelmessieh. Moreover, Dr. Abdelmessieh's findings are not inconsistent with the ALJ's conclusion that Plaintiff has the RFC to perform a full range of light work. Light work is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). To be categorized as being capable of performing a full range of light work requires "the ability to do substantially all of these activities." Id. This is not inconsistent with Dr. Abdelmessieh's findings that Plaintiff could occasionally climb, balance, stoop, kneel, crouch or crawl. (Tr. 293.) Moreover, the ALJ relied on Dr. Abdelmessieh's assessment in finding that Plaintiff could

"lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day." (Tr. 16, 292.)

Contrary to Plaintiff's statement that "[t]he ALJ cites no source for the RFC" (Letter memo 1), the ALJ relied on numerous sources of evidence to reach his conclusion. In addition to citing Dr. Abdelmessieh's assessment, the ALJ also made a thorough analysis of Dr. McHugh's records from July 11, 2003 to July 25, 2008, noting that noncompliance with diet and lab work were generally at issue when the claimant's hemoglobin A1c and/or glucose levels were elevated. (Tr. 15.) The ALJ recognized that although there were incidences in 2004 and 2006 when the claimant had episodes of uncontrolled blood pressure, "[r]ecords from January 16, 2007 to May 20, 2008 indicate that the claimant's blood sugar was well controlled and he reported being active on March 12, 2008 (Exhibit 3F)." (Id.) The ALJ also reviewed records from November 20, 2008 to October 13, 2009, from which he concluded that "[i]t is evident that adjustments in the claimant's insulin levels have put an end to the hypoglycemic episodes." (Id.)

Moreover, the ALJ adequately addressed contrary evidence, namely Plaintiff's claims that his blood sugar fluctuated wildly. The ALJ ultimately found that the record did not support Plaintiff's testimony. (Tr. 15.) The ALJ cited treatment notes from Dr. McHugh dated July 25, 2008, which indicated that the claimant's blood sugar levels generally ranged from 130-140. (Id.) The ALJ also addressed the claimant's complaint of leg problems and use of a cane, as discussed above, and found that the record did not support any evidence of the claimant suffering from neuropathy. (Tr. 15.)

Finally, the ALJ addressed the claimant's hypertension, finding that there was "no evidence of significant related end organ damage." (Tr. 16.) In support, the ALJ pointed to EKG studies completed on June 10, 2008 and July 10 2008, which showed normal results with

17

the exception of sinus bradycardia. (Tr. 16, 170-71, 188.) The ALJ also cited to Dr. Patel's notes from September 5, 2008, which indicated that the claimant's blood pressure was 150/100 and that his heart had a regular sinus rhythm. (Tr. 16, 287.)[2]

In sum, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [to be] not credible." (Tr. 14.) "Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d. Cir 1999) (citing 20 C.F.R. § 404.1529). The ALJ, as the fact finder, "evalutate[s] the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Id. This is a credibility determination and in reviewing the ALJ's credibility determinations, this Court applies the substantial evidence standard. See Knepp v. Apfel, 204 F.3d at 83. This Court finds that the ALJ's conclusions are reasonably supported by substantial evidence.

*iv.   The ALJ Properly Found Plaintiff to be Capable of Performing Past Relevant Work*

According to Plaintiff's own testimony, while working as a delivery man, he drove from place to place. (Tr. 26.) Although the work involved "quite a bit" of walking, he only had to do "very light" lifting. (Id.) Furthermore, the Function Report dated 10/1/2008 indicates that the most Plaintiff had to carry as a messenger was five pounds. (Tr. 117.) This evidence is consistent with ALJ's finding that Plaintiff is capable of performing his past relevant work as a

---

[2] Plaintiff also argues that the ALJ ignored the fact that he had "chronic microvascular ischemic changes with loss of periventricular white matter disease" based on a CAT scan located on page 152 of the administrative record. (Letter memo 2.) However, there is no such evidence on the page Plaintiff cites to; page 152 simply lists Plaintiff's prescription profile. (Tr. 152.) Accordingly, the Court can make no assessment of it. In any event, the ALJ relied on ample, consistent evidence from the record that would outweigh this evidence, even if it were contained in the record.

messenger, given his residual functional capacity to perform a full range of light work. (Tr. 14-16.)

Plaintiff's objection to the ALJ's findings at step four is based on facts that the ALJ found to be not credible. (Letter memo 1-2, Tr. 157.) For example, Plaintiff points to his limp as a reason why he could not possibly work as a messenger. (Letter memo 1.) Once again, the ALJ made his credibility determination and found Plaintiff to be capable of a full range of light work despite his claims of a leg limp. This Court finds that the ALJ supported his findings with adequate evidence from the record and therefore defers to his factual findings.

Moreover, as Defendant notes, there is no evidence in the record to reflect that Plaintiff ever used a bicycle to make deliveries. (Tr. 157, Def.'s Br. 15.) As Plaintiff himself testified, he drove from place to place in a Jeep. (Tr. 26.) In light of all of the above, this Court concludes that the ALJ did not err in his finding that Plaintiff was capable of resuming his past work as a messenger.[3]

---

[3] To the extent the ALJ indicated that Plaintiff was capable of performing work as a car detailer, there is ample evidence in the record to indicate that Plaintiff is capable of doing such work. Plaintiff contends that he could not serve as a car detailer because the job would involve "walking, crouching, crawling, stooping and bending." (Id.) However, Dr. Abdelmessieh found that Plaintiff could occasionally stoop, kneel, crouch, and crawl. (Tr. 293.) As such, the ALJ's finding is not in error.

## III. CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part and remanded in part. An appropriate Order accompanies this Opinion.

Dated: June 14, 2013

HON. CLAIRE C. CECCHI
United States District Judge